## Charles M. Bredhoff and Fred L. Hilmer, Appellees, v. Louis Lepman and Frank M. Heggie, Appellants.

## Gen. No. 17,521.

1. APPEALS AND ERRORS—*where trial is by the court.* Where an action is tried by the court and no propositions of law are presented, the only questions to be considered on appeal are whether the trial court erred in any ruling on the admissibility of evidence as to which an exception was preserved and whether the evidence supports the finding and judgment.

2. PRACTICE—*under section 54.* Under section 54 of the Practice Act, where defendants are sued as partners and file no plea denying the partnership or the alleged partnership liability, the failure to file such a plea relieves plaintiffs of the necessity of proving "in the first instance" that defendants are liable as partners.

3. PRACTICE—*burden of proving partnership.* Where defendants are sued as partners, in the absence of a plea denying the partnership, the burden of proving that no partnership existed and that they are not liable as partners is assumed by defendants.

4. PARTNERSHIP—*meaning of word "firm."* The word "firm" in its common acceptation implies a partnership.

5. PARTNERSHIP—*where defendants are liable as partners.* In an action for damages where defendants refused to pay a sight draft and take a car load of butter purchased of plaintiffs, evidence that defendants did business as partners for several years and did not notify plaintiffs of any change in the firm, is sufficient to establish the partnership, there being no denial of its existence in the pleadings.

6. PARTNERSHIP—*notice of dissolution or change.* In order to escape liability upon contracts made in the firm name after a dissolution or change in the partnership, it is necessary that a notice of some sort be given to those likely to be affected thereby.

Appeal from the Superior Court of Cook county; the HON. ALBERT C. BARNES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed May 29, 1913.

FRANK SCHOENFELD, for appellants.

J. E. INGRAM, for appellees; HERMAN FRANK, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

Appellees, who are in business in San Francisco, sued appellants as partners, doing business in Chicago, for damages accruing from the sale of a carload of butter, and recovered a judgment upon a trial before the court without a jury.

It appears from the evidence that in April, 1902, appellant, Heggie, telegraphed to appellees: "Wire lowest fresh creamery tubs, how many, how packed, when can ship." Appellees replied: "Offer car fresh creamery sixty pound tubs, twenty-two cents, Monday shipment, acceptance here, answer quick." Heggie telegraphed the same day: "Accept 300 tubs fresh creamery, sixty pounds, Monday shipment, route Union Pacific Northwestern to Chicago, iced in transit, 22 cents, Frisco. Give good weights, long lines as possible, fine quality. Am taking long chances of profit. Confirm sale by wire." To this appellees wired the next day: "Will ship car Monday as per your wire." Heggie then telegraphed: "If minimum 24,000, ship three-fifty, if 20,000 ship three hundred." Appellees thereupon packed and shipped over the designated route a carload of 350 tubs of "strictly fresh creamery goods," selected from the largest creameries (that being the meaning of the term "long lines"), weight 24,000 pounds, iced in transit. A bill of lading for this shipment, made to the order of appellees at Chicago, "notify Lepman & Heggie," was attached to a sight draft on appellants for $4,645.50, payable to the order of a San Francisco bank and forwarded by the latter to its Chicago correspondent. An invoice was also sent by mail to appellants with a letter stating: "We are drawing sight draft on you, which kindly honor when presented." Appellants refused to pay the draft when presented, on the ground that the railroad company declined to permit an examination of the car until the draft was paid. Appellants wired appellees for such permission, but appellees

Bredhoff et al. v. Lepman et al., 181 Ill. App. 247.

wired back: "Mr. Heggie bought this car acceptance San Francisco. Please pay draft as per sale." Appellants refused to do so, and the carload of butter was then sold by another Chicago commission house in the open market at prices ranging from 20 1-4 cents to 21 cents a pound. After deducting freight and storage charges, the net amount thus realized was remitted to appellees, who sued appellants for the balance of the contract price with interest. The declaration contained several special counts and the common counts. Appellants filed the general issue.

No propositions of law were presented to be marked "held" or "refused." The only questions, therefore, open to our consideration are whether the trial court erred in any ruling on the admissibility of evidence as to which an exception was preserved, and whether the evidence supports the finding and judgment. *Armstrong & Co. v. Barrett,* 46 Ill. App. 193; *Flood v. Leonard,* 44 Ill. App. 113; *Mullin v. Johnson,* 98 Ill. App. 621; *Crean v. Hourigan,* 158 Ill. 301; *City of Alton v. Foster,* 207 Ill. 150; *Jacobson v. Liverpool & L. & G. Ins. Co.,* 231 Ill. 61; *Mutual Protective League v. McKee,* 223 Ill. 364.

The only alleged error concerning the admissibility of evidence is in admitting in evidence a sales bill, or statement of account, purporting to show the prices obtained and the gross and net amounts realized from the resale of the butter. This evidence was only cumulative. The essential facts tabulated in the bill, and the fact that a check for the amount of the net balance had been received by appellees, were already in evidence. The error, if any, in admitting the bill in evidence, was therefore harmless.

The main defense of appellants was that they were not liable as partners. They filed no plea, however, denying the partnership, or the alleged partnership liability. The failure to file such a plea relieved appellees of the necessity of proving, "in the first in-

stance," that appellants were liable as partners. Practice Act, sec. 54. In the absence of such a plea, the burden of proving that no partnership existed and that they were not liable as partners, was assumed by appellants. *Bensley v. Brockway,* 27 Ill. App. 410; *Readey v. Schwanzenbach,* 48 Ill. App. 348. Appellants testified that at the time of the transaction in question (April, 1902) they were not partners, that a corporation named "Lepman & Heggie" was formed in April, 1901, with appellant, Lepman, as president and treasurer, and appellant, Heggie, as vice president and secretary, and that they acted on behalf of that corporation in buying the carload of butter from appellees. One of the appellees testified that he "had known Lepman & Heggie *as a firm* for the last ten years." The word "firm," in its common acceptation, implies a partnership. It is frequently used in that sense by almost all text writers. See, especially, the article on "Partnership" in 30 Cyc. See also *McCosker v. Banks,* 84 Md. 292. This evidence was given in 1906. Hence the "firm" existed as early as 1896, six years prior to the transaction in question. Appellants did not deny that prior to the formation of the corporation they had been doing business as partners under the same name, and they did not attempt to show that any notice, either actual or constructive, of the dissolution of the "firm" of "Lepman & Heggie" was ever given to the trade or the public generally, or to appellees in particular. It is a familiar principle of the law relating to commercial partnerships, that in order to escape liability upon contracts made in the firm name after a dissolution or change in the partnership, it is necessary that a notice of some sort be given to those likely to be affected thereby. As to those with whom the firm has had dealings, actual notice is required; as to others, a notice by publication is sufficient. *Chicago Trust & Savings Bank v. Kinnare,* 174 Ill. 358; *Hodgen v. Kief,* 63 Ill. 146; *Southern v. Grim,* 67 Ill.

106; *Holtgreve v. Wintker*, 85 Ill. 470; *Meyer v. Krohn*, 114 Ill. 574. It appears from the evidence that the letter heads used by the corporation at the time of the transaction in question contain merely the words "Lepman & Heggie, Commission Merchants," without anything to indicate that this was the name of a corporation. It is a fair inference, at least, from all the evidence, that to all outward appearances, the business of appellants was conducted in precisely the same manner, and by precisely the same persons, after as before the incorporation. Upon the whole record, we think the proof was sufficient to establish the liability of appellants as partners in view of the nature of the pleadings.

The difference between the amount realized upon the resale and the contract price was $972.49. Interest on this amount from April, 1902, to the time of the finding and judgment, amounts to more than the difference between $972.49, and the amount of the judgment, $1,176.79. Appellants therefore, have no just cause of complaint on the score of the amount of damages assessed.

The judgment of the Superior Court will be affirmed.

*Affirmed.*