## PETER E. SPURCK
### v.
## LOUISA M. LEONARD ET AL.

1. PARTNERSHIP—DISSOLUTION.—The rule of law is that the partnership in any business ceases when there is an end to the business itself.

2. NEW CONTRACTS AFTER DISSOLUTION.—After dissolution of a partnership the authority for making new contracts is completely revoked. The giving of a promissory note, or the acceptance of a bill of exchange or draft, is the making of a new contract, although it may be for a prior debt.

3. AUTHORITY OF ONE PARTNER TO GUARANTY NOTE.—One member of a firm, by virtue of the partnership, has no legal right to sign the firm name as surety or guarantor for a third party, and if he does so, the act, as to the members not consenting, will be a nullity.

4. NOTICE TO PAYEE—BURDEN OF PROOF OF AUTHORITY.—The fact that one member of a firm signs the firm name as guarantor to a promissory note, is notice to the payee of such note that he is signing such name outside the scope of the partnership business, and it will not bind the firm unless some authority other than the mere fact of partnership or a subsequent ratification is shown. The burden of showing such authority rests upon the payee of the note.

5. AUTHORITY CEASES ON DISSOLUTION OF FIRM.—The evidence of authority to sign the firm name as guarantor is unsatisfactory, but even conceding that such authority once existed, it ceased at the time the firm ceased to do business, and the subsequent signing as guarantor upon a renewal of the original note, cannot bind the members of the firm not consenting. The signing being under color of the partnership, notice of its dissolution is sufficient notice that the guaranty was signed without authority.

6. NOTICE TO PAYEE OF DISSOLUTION.—Where a firm is dealing with a person in due course of business of the firm, and a dissolution takes place, notice to such party of the dissolution of the firm is necessary in order to release the firm from liability, where other credit is obtained in the regular course of business after dissolution, but where the transaction is not in the regular course of business, no notice is necessary.

APPEAL from the Circuit Court of Peoria county; the Hon. N. M. LAWS, Judge, presiding. Opinion filed October 11, 1881.

Messrs. PUTERBAUGH & PUTERBAUGH, for appellant; contending that a firm guaranty executed by one partner in a matter outside the partnership business will not bind the other mem-

Spurck v. Leonard.

bers of the firm unless it is by their authority, or is ratified by them after a full knowledge of the facts, cited Sutton v. Irwine, 12 Serg. & R. 15; Livingston v. Roosevelle, 4 Johns. 251; Foot v. Sabin, 19 Johns. 156; Dobb v. Halsey, 16 Johns. 38; Bank of Rochester, 7 Wend. 159; Robertson v. Smith, 18 Johns. 459; Mercien v. Mack, 10 Wend. 461; Bank of Kentucky v. Brooking, 2 Litt. 44; Boyd v. Plumb, 7 Wend. 310; Rollins v. Stevens, 31 Me. 454; N. Y. F. Ins. Co. v. Bennett, 5 Conn. 574; Livingston v. Hastie, 2 Carnes, 246; Laverty v. Burr, 1 Wend. 529; Lansing v. Gaine, 2 Johns. 300; Joyce v. Williams, 14 Wend. 141; Weed v. Richardson, 2 Dev. & Bat. 535; Rolston v. Click, 1 Stew. 526; Taylor v. Hillyer, 3 Blackf. 433; Miller v. Hughes, 1 A. K. Marsh, 181; Long v. Carter, 3 Ind. 238; Tompkins v. Woodyard, 5 W. Va. 216; Stahl v. Catskill Bank, 18 Wend. 477; Mauldin v. Branch Bank, 2 Ala. 502; Marsh v. Tompkins, 2 Bradwell, 217; Davis v. Blackwell, 5 Bradwell, 32; McNair v. Platt, 46 Ill. 211; Brewster v. Mott, 4 Scam. 378; Hilliard v. Walker, 11 Ill. 644; Story on Part. § 127; Parsons on Part. 216; Parsons on Bills, 140.

The name of the firm appearing as guarantors merely, is notice to the payee that it was given out of the course of the partnership business: Foot v. Sabin, 19 Johns. 156; Bank of Rochester v. Bowen, 7 Wend. 159; Rollins v. Stevens, 31 Me. 454; Sweetzer v. French, 2 Cush. 314; Hamill v. Perris, 2 Penn. 177; Duncan v. Lowndes, 3 Camp. 478; Marsh v. Tompkins, 2 Bradwell, 217; Davis v. Blackwell, 5 Bradwell, 32.

An instruction not based on the evidence is erroneous: Bradley v. Parks, 83 Ill. 169; Howe Sew. M. Co. v. Layman, 88 Ill. 39; Badger v. Batavia Mfg. Co. 70 Ill. 302; Nichols v. Bradsly, 78 Ill. 44.

Dissolution of a partnership operates as a revocation of authority to make new contracts, and the giving of a note is the making of a new contract: Collyer on Part. § 541; 3 Kent's Com. 70; Hamilton v. Seaman, 1 Ind. 185; Palmer v. Dodge, 4 Ohio St. 21; Wilson v. Forden, 20 Ohio St. 89; Haddock v. Crockeron, 32 Tex. 276; Curry v. White, 51 Cal. 530; Brown v. Broach, 52 Miss. 536; Smith v. Sheldon, 35 Mich. 42; 1 Daniell's Neg. Inst. 280.

A partner cannot sign the firm name to a negotiable paper after dissolution of the firm, even in settlement of prior debts: Perrin v. Keene, 19 Me. 355; Nat. Bank v. Wharton, 1 Hill, 572; Parker v. Cousins, 2 Gratt. 373; Haddock v. Crockeron, 32 Tex. 276; Palmer v. Dodge, 4 Ohio St. 21.

Mr. WM. DON MAUS and Messrs COOPER & TENNERY, for appellees; that evidence that a firm was in the habit of endorsing for another is sufficient evidence of authority from all the members of the firm, cited Duncan v. Lowndes, 3 Camp. 478; Gansevoort v. Williams, 14 Wend. 133; Gans v. Samuel, 14 Ohio, 592; Darling v. March, 22 Me. 184.

LACEY, J. This was an action in assumpsit by appellees against appellant, declaring against him and Simon J. Kilduff as partners, on an alleged guarantee of a promissory note, for the sum of six thousand dollars, dated May 30th, 1879, payable to appellees, due six months after date, with interest at the rate of ten per cent. per annum, and executed by Neil & McGrew as principals. There was trial by jury, and verdict and judgment for appellees for $6,675. There were appropriate pleas under oath by appellant, denying the execution of the guarantee sued on, and his joint liability with Simon J. Kilduff. The guarantee was signed in the firm name of "Spurck & Co." by and in the handwriting of Kilduff, and was endorsed on the back of the note.

It abundantly appears from the evidence, and is not controverted, that the consideration of the note was the surrender of a note of similar tenor and amount, dated about six months earlier than this one, payable to one J. E. Leonard, father of F. E. Leonard, appellee; that this was in fact a renewal note. It likewise appears that none of the considerations of the note in question or the former one, passed to appellant or to the firm of Spurck & Co., but who'ly passed to Neil & McGrew, and that the purported guarantee was wholly for the accommodation of the latter. The evidence we think abundantly shows that at the time the note in suit was signed, the appellant knew nothing whatever of the signing of the guar-

antee by his partner Kilduff, and gave no authority for such act, nor has he ratified the same since.

It appears from the evidence that appellant and Kilduff were associated together under the firm name of Spurck & Co., for the purpose of carrying on the business of distilling spirits in the city of Peoria. That they commenced such business in the fall of 1875, and continued till the last part of May, in the year A. D. 1877, when they shut down and transacted no business after that. The evidence further shows that Neil and McGrew, the makers of the note, were a firm composed of Thomas Neil and Thomas J. McGrew, and during the existence of the firm of Spurck & Co., and while the latter were carrying on the distilling business, were largely engaged in the live stock business, and feeding cattle in the City of Peoria, and fed cattle at the distillery of Spurck & Co. for several years, and until the latter quit business, in the spring of 1877, Neil was the managing, active man of the firm of Neil and McGrew. At the date of the note in question, Kilduff was a member of the firm of Neil, McGrew, &. Co., carrying on the live stock business in Peoria. This latter firm was the successors of Neil & McGrew. Another fact in the case is that Neil, McGrew & Co. failed in December, 1879, and Neil absconded and left the State.

Under these circumstances, so far as stated, can appellant be held liable on this guarantee ?

We think not, for the following reasons : The firm of Spurck & Co., though not formally dissolved by agreement of the partners, was really and in law dissolved in May, 1877, at the time the distillery shut down and the firm quit business. For the rule of law is that "The partnership in any business shall cease when there is an end put to the business itself." The business of the firm of Spurck & Co. had ended long before the supposed signing of this note by Kilduff in the name of the firm as guarantors. And the law is well settled that after dissolution of a firm the authority for making new contracts is completely revoked. "The giving of a promissory note, or the acceptance of a bill of exchange or draft is the making of a new contract, although it may be for a prior debt : a partner

after dissolution cannot thus bind the firm." For a full state-ment of the law on both the above points, we cite Bank of Montreal v. Page, 38 Ill. 109, and cases there cited. Had there been any authority, either express or implied, prior to the dissolution of the partnership, on the part of appellant to Kilduff to sign the name of the firm to a guarantee of the nature of the one sued on, it was wholly revoked by the disso-lution.

It is conceded by counsel for appellee to be the law that one partner, by virtue of the partnership, has no legal right to sign the name of the firm as surety or guarantor for a third party to any note or bill, and if he does so the act as to the member not consenting, will be a nullity. It is also conceded to be the law, and it cannot be controverted, that the fact that one mem-ber signs the name of the firm as guarantor to a promissory note is notice to the payee of such note that he is signing such name outside of the scope of the partnership business, and that it will not bind the firm unless some other authority is shown than the mere fact of partnership; and the payee know-ing the fact takes the burthen of proof on himself to show some other and sufficient authority or subsequent ratification by the partner not signing, if he seeks to hold such partner bound as guarantor. The presumption is that the partner not signing it is not bound. McNair v. Platt, 46 Ill. 213.

It is held in the case last cited, that "beyond the scope of the partnership business, authority to act must be shown, precisely as if any other person had performed the act, or the firm will not be bound." But it is claimed on the part of counsel for appellees, that they have shown a right of recov-ery, by showing (1) that Kilduff, by the usages of the firm, had general authority to sign the name of the firm of Spurck & Co. to any guarantee of the notes of Neil & McGrew, that the appellees have proven facts from which the jury might rightfully find the existence of such general authority. (2) That the note in question "was the last in a series (all signed and indorsed in the same way) of a note of Neil & McGrew, in the same amount to J. E. Leonard, in his life time, dated May 1, 1877, guaranteed by Spurck & Co., on which a loan of

Spurck v. Leonard.

$6000 was obtained by Neil & McGrew, from Leonard, the accrued interest being paid at each renewal, but no part of the principal;" * that the original indorsement was given, not only before the formation of the partnership of Neil, McGrew & Co., but before the business of Spurck & Co. was closed. (3) That if the original signing of the guarantee was valid, which they contend is proven, and authority of Spurck shown, "the legal inference would be that the authority continued to sign renewal guarantees from time to time, till the debt was paid or the authority was revoked by Spurck. While the evidence is not satisfactory that Spurck acquiesced in the signing of guarantees of his firm, to the paper of Neil & McGrew, to such a general extent without Kilduff first obtaining special authority as to give the latter the right to sign the name of the firm generally, and without first obtaining special leave from him so to do, and while the evidence is alike of an unsatisfactory character, to show that the note and guarantee in suit were renewed from time to time, and given in lieu of similar notes, since May, 1877, the last one being given to appellees, who are the legal representatives of J. E. Leonard, deceased, and whilst it might be admitted that the evidence was sufficient to sustain the finding of the jury on these points, we do not think it at all follows from the establishment of those propositions, and the fact that the first guarantee might be held valid, that the authority would continue to Kilduff, to execute subsequent renewal guarantees, including the one in question, as is contended for by appellee's counsel.

In view of the rules of law above quoted, it will be seen that all authority or pretended authority by Spurck to Kilduff to execute guarantees on Neil & McGrew's note ceased after May, 1877, if any existed before that time. The latter was the date of the quitting of business of Spurck & Co., and in consequence the dissolution of the partnership. The evidence shows that after that date no authority whatever was given by Spurck to Kilduff to sign any paper in the name of the late firm—in fact the former never knew till after the failure of Neil, McGrew & Co. in 1879, that the guarantee in question had been signed, and then he refused to ratify it, and no other signing of the firm name is known to have been done.

Were the facts admitted that the first note was valid for the reasons contended for, and that regular renewals took place up to the execution of the note and guarantee in question, it is apparent that there was no legal authority remaining in Kilduff to execute the guarantee in May, 1879, two years after the dissolution of the firm of Spurck & Co., unless it can be successfully claimed that J. E. Leonard, deceased, had no notice at the times of the several renewals, if there were . any, and that *appellees* had no notice of the dissolution of the firm of Spurck & Co. at the time of the execution of the claimed guarantee in question; and unless it can be successfully maintained that such notice under the facts of the case was material and necessary to be given before authority to Kilduff to renew, if he had any, would cease.

It is a rule of law that where a firm is in the habit of dealing with a party in one course of business of the firm and a dissolution takes place, notice to such party of the dissolution is necessary in order to release the firm from liability where other credit is obtained in the regular course of business of the firm after dissolution, and as to all other parties, notice in the newspapers is sufficient; but where the transaction is not in the regular course of business, no notice is necessary. Hick v. Russell, 72 Ill. 230, and cases therein quoted. Whitmore v. Lombard, 3 Pickering, 177.

In the case cited, Russell Bros., before dissolution, were indebted to L. H. Sargent & Co., and gave their note for the amount of the indebtedness; to secure the note, E. S. Russell gave a deed of trust on his (Russell's) real estate. Three years after the dissolution of the firm of Russell Bros., and also Sargent and and Co., Briggs, a member of the late firm of Sargent & Co., claiming one of the members of his firm owed him, procured E. S. Russell to execute two notes in name of the firm of Russell Bros., sued on in that case to him, Beggs, individually, and not to the firm of Sargent & Co. The notes were executed in payment of the Russell notes in the hands of L. H. Sargent & Co., and Beggs executed a release of the notes. The notes were indorsed to Hicks before due, and suit brought on them. Beggs' partner, Sargent, re-

fused to ratify the action of Beggs. Charles R. Russell, one of the partners, made defense, denying his joint liability, and also the existence of the firm of Russell Bros. at the time of the execution of the notes. The question in that case, was notice necessary to Beggs of the dissolution of the firm of Russell Bros., the former being accustomed to deal with the partnership?

The court held in substance that these new notes were not given in the regular course of business, and that no new debt was created, and no new credit given to the firm of Russell & Co., and that there need not be given notice of dissolution. The case cited as being analogous of Whitman v. Lombard, 3 Pick. 177, there was a promissory note signed by Boyce & Luther, not yet due. Boyce absconding, Luther went to the promisee and told him that Boyce & Luther were in difficulty, and reserved the note in the name of Boyce & Luther, making it payable on demand. The court held that the absconding of Boyce dissolved the partnership, and that the transaction was one intended to give the creditor an opportunity of favoring himself, which was not according to the ordinary course of trade; hence no notice of dissolution was necessary.

So in the case at bar, if the first guarantee were signed in May, 1877, and regularly renewed every six months till May, 1879, as is claimed, it was not for the benefit of Spurck & Co. It was for the special benefit of Neal & McGrew, who desired extension of time, and of Leonard, who wanted to receive his semi-annual ten per cent. interest. It was to the disadvantage of Spurck & Co., for the longer the time were extended the more danger of the failure of Neil & McGrew. The signing of the guarantee in the first place under the rules of law, was known to Leonard to be outside the ordinary course of trade of the guarantors, and Kilduff's authority, if he had any, to depend upon license granted by Spurck outside of such course of trade. The obligation of Spurck & Co. in such case has more the nature of a joint liability than one of partnership; it depending upon special authority not arising *from* partnership, renewals of the guarantee from time to time could not become a partnership transaction; their validity must depend

upon the existence of other authority; nor could such authority be inferred from the fact that the first existed any more than in case of the right of one joint obligor to renew his own and his co-obligor's liability without the latter's consent.

"The authority to sign a contract not in course of trade, by one partner in order to bind the firm, must be as ample as though another person had performed the act." McNair v. Platt, above quoted.

The signing of the guarantee in suit is like the case of Hicks v. Russell, a transaction beyond the scope of the general course of business of the firm. It being a transaction not having for its authority the general firm powers, it follows that no notice of the dissolution of the firm necessary to Leonard to put him on his guard as to the power of Kilduff to sign the firm name. By the closing up the firm business of Spurck & Co. and its consequent dissolution, the right of either one of the old members to execute new obligations ceased. Under the circumstances of this case, no actual notice of such dissolution to Leonard or appellees was necessary. Leonard lived in Pekin, about ten miles from Peoria, and any time within the two years during which this obligation claimed to have been renewed, the slightest inquiry would have disclosed the fact that the firm of Spurck & Co. had ceased to do business and was dissolved. If any constructive notice were necessary to Leonard of the ceasing of Kilduff's powers, if he had any, we think that under the circumstances notice should be implied. The signing of the guarantee was made under color of the partnership, and notice of its dissolution, which appellee must be held to, is sufficient notice that the guarantee was signed without authority.

The case of Hicks v. Russell holds, when the signing of the firm name by one partner in any transaction after the partnership is dissolved, is done outside the ordinary course of the firm business, notice of the dissolution is not necessary to the obligee, and the contract will be void.

We think this case comes fairly within the reason of the rule announced in that opinion.

We do not think the cases of Duncan v. Lowndes & Bate-

man, 3 Comp. 478; Gansevort v. Williams, 14 Wendell 133–9;  *a/*
Gans v. Samuel, 14 Ohio, 592, and Darling v. March, 22 Me.
184, are at variance with the principles here announced.
Those cases, appear to hold that under certain circumstances
the custom of the firm may be shown to establish an implied
power of one member to execute contracts in the name of the
firm outside the scope of its business. Without discussing
those cases it will be seen by reference to them, that when the
various contracts under discussion were signed the firms were
not dissolved: In the case at bar, when this guarantee was
executed the firm had been dissolved about two years. Kil-
duff, not having had the power to sign the name of Spurck & Co.
to the guarantee in question, the judgment is reversed, and
the cause remanded.

Reversed and remanded.